1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10   VERGIE M. CHANDLER,            )     NO. EDCV 07-1321-CT
                                    )
11             Plaintiff,           )     OPINION AND ORDER
                                    )
12        v.                        )
                                    )
13   MICHAEL J. ASTRUE,             )
     Commissioner of               )
14   Social Security,               )
                                    )
15                                  )
               Defendant.           )
16                                  )
     _____)

17

18        For the reasons set forth below, it is ordered that judgment be

19   entered in favor of defendant Commissioner of Social Security ("the

20   Commissioner") because the Commissioner's decision is supported by

21   substantial evidence and is free from material legal error.

22                    SUMMARY OF PROCEEDINGS

23        On October 10, 2007, plaintiff, Vergie M. Chandler ("plaintiff"),

24   filed a complaint seeking judicial review of the denial of benefits by

25   the Commissioner pursuant to the Social Security Act ("the Act"). On

26   December 20, 2007, the parties filed a stipulation agreeing to

27   voluntarily remand the matter for further administrative proceedings

28   pursuant to the sixth sentence of § 405(g) of the Social Security Act,

1 | 42 U.S.C. § 405(g).

2 |   On July 14, 2009, the parties filed a stipulation to reopen the

3 | case.   On September 29, 2009, plaintiff filed a brief with points and

4 | authorities in support of remand or reversal.   On October 26, 2009, the

5 | Commissioner filed a memorandum in opposition.

6 | SUMMARY OF ADMINISTRATIVE RECORD

7 |   1. <u>Proceedings</u>

8 |   On September 10, 2004, plaintiff filed an application for

9 | disability insurance benefits, alleging disability since August 1, 2000,

10 | due to a back injury, asthma, and multiple sclerosis. (TR 54-71.)[1] The

11 | application was denied initially and upon reconsideration.   (TR 18-22,

12 | 26-30.)

13 |   On March 30, 2005, plaintiff, who has been represented by the same

14 | attorney since February 2005, filed a request for a hearing before an

15 | administrative law judge ("ALJ").   (TR 31.)   On July 11, 2006, and

16 | August 23, 2006, she appeared with her attorney and testified at

17 | hearings.   On October 20, 2006, the Commissioner issued a partially

18 | favorable decision awarding benefits as of February 26, 2005.   (<u>See</u> TR

19 | 314-21.)   Plaintiff sought review in this court and, on December 20,

20 | 2007, the parties entered a voluntary stipulation to remand this matter

21 | for a <i>de novo</i> hearing on the basis that the recording of the

22 | administrative hearing was inaudible.   (<u>See</u> TR 325-27.)

23 |   On May 14, 2008, plaintiff, represented by an attorney, appeared

24 | and testified again before the same ALJ who conducted her initial

25 |

26 |   [1] "TR" refers to the transcript of the record of

27 | administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

28 |

2

1   hearings.   (TR 383-414.)  The ALJ also considered vocational expert

2   ("VE") testimony, (TR 412-14), and heard the testimony of the same

3   medical expert ("ME") who testified at plaintiff's hearings initially,

4   (TR 391-400).

5        On June 25, 2008, the ALJ issued a decision finding that plaintiff

6   was not disabled, as defined by the Act, at any time prior to June 30,

7   2007,[2] the date she was last insured, because she remains able to perform

8   a significantly limited range of "light" level work,[3] and that she thus

9   was not eligible for benefits.   (TR 9-15.)   Accordingly, the ALJ's

10  decision stands as the final decision of the Commissioner.

11       Plaintiff subsequently sought judicial review in this court.

12            2.   Summary Of The Evidence

13       The ALJ's decision is attached as an exhibit to this opinion and

14  order and materially summarizes the evidence in the case.

---

16  [2]  The ALJ indicated that he initially found plaintiff to be
    disabled as of February 2005 based on ME testimony that she
17  suffered from a listing-level knee impairment.  The ALJ concluded
    this initial decision was in error, however, and that plaintiff's
18  knee impairment is "mild" because the ME recanted his initial
    finding, citing specific and abundant record evidence showing
19  only "mild" osteoarthritis of the knee; the ALJ concurred based
    upon his review of the record.   (TR 12.)
20

21  [3]  The Social Security regulations define "light" work as
    follows:  Light work involves lifting no more than 20 pounds at a
22  time with frequent lifting or carrying of objects weighing up to
    10 pounds.   Even though the weight lifted may be very little, a
23  job is in this category when it requires a good deal of walking
    or standing, or when it involves sitting most of the time with
24  some pushing and pulling of arm or leg controls.   To be
    considered capable of performing a full or wide range of light
25  work, you must have the ability to do substantially all of these
    activities.   If someone can do light work, we determine that he
26  or she can also do sedentary work, unless there are additional
    limiting factors such as loss of fine dexterity or inability to
27  sit for long periods of time.   20 C.F.R. § 404.1567

28                                  3

1      PLAINTIFF'S CONTENTIONS

2      Plaintiff essentially contends the ALJ failed to properly consider:

3   1.   The treating physician's opinion;

4   2.   Plaintiff's subjective complaints, and to make proper credibility

5      findings; and,

6   3.   The chiropractor's opinion.

7      STANDARD OF REVIEW

8      Under 42 U.S.C. § 405 (g), this court reviews the Commissioner's

9   decision to determine if: (1) the Commissioner's findings are supported

10  by substantial evidence; and, (2) the Commissioner used proper legal

11  standards.   Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).

12  Substantial evidence means "more than a mere scintilla," Richardson v.

13  Perales, 402 U.S. 389, 401 (1971), but less than a preponderance.

14  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

15      When the evidence can reasonably support either affirming or

16  reversing the Commissioner's conclusion, however, the Court may not

17  substitute its judgment for that of the Commissioner.   Flaten v.

18  Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir.

19  1995).    The court has the authority to affirm, modify, or reverse the

20  Commissioner's decision "with or without remanding the cause for

21  rehearing."   42 U.S.C. §405(g).

22      DISCUSSION

23  1.   **The Sequential Evaluation**

24      A person is "disabled" for the purpose of receiving social security

25  benefits if he or she is unable to "engage in any substantial gainful

26  activity by reason of any medically determinable physical or mental

27  impairment which can be expected to result in death or which has lasted

28                                                           4

1  or can be expected to last for a continuous period of not less than 12

2  months."   42 U.S.C. §423(d)(1)(A).

3       The Commissioner has established a five-step sequential evaluation

4  for determining whether a person is disabled.   First, it is determined

5  whether the person is engaged in "substantial gainful activity."  If so,

6  benefits are denied.

7       Second, if the person is not so engaged, it is determined whether

8  the  person  has  a  medically  severe  impairment  or  combination  of

9  impairments.    If  the  person  does  not  have  a  severe  impairment  or

10  combination of impairments, benefits are denied.

11       Third, if the person has a severe impairment, it is determined

12  whether  the  impairment  meets  or  equals  one  of  a  number  of  "listed

13  impairments." If the impairment meets or equals a "listed impairment,"

14  the person is conclusively presumed to be disabled.

15       Fourth, if the impairment does not meet or equal a "listed

16  impairment," it is determined whether the impairment prevents the person

17  from performing past relevant work.   If the person can perform past

18  relevant work, benefits are denied.

19       Fifth, if the person cannot perform past relevant work, the burden

20  shifts to the Commissioner to show that the person is able to perform

21  other kinds of work.   The person is entitled to benefits only if the

22  person is unable to perform other work.   20 C.F.R. § 404.1520; <u>Bowen v.</u>

23  <u>Yuckert</u>, 482 U.S. 137, 140-42 (1987).

24  2.   <u>**Issues**</u>

25       A.   <u>**Treating Physician's Opinion**</u> (Issue # 1)

26       Plaintiff first asserts that the ALJ failed to give proper weight

27  to limitations opined by her treating physician, Stephen C. McDonnell,

28

1  M.D., in two letters written in 2006 and 2007. (<u>See</u> TR 242, 380-83.)

2          In general, the Social Security Administration favors the opinion

3  of a treating physician over that of a non-treating physician.   <u>See</u> 20

4  C.F.R. §§ 404.1527, 416.927.   If a treating physician's opinion is

5  "well-supported by medically acceptable clinical and laboratory

6  diagnostic techniques" and is not inconsistent with the other

7  substantial record evidence, it will be given controlling weight. 20

8  C.F.R. §§  404.1527(d)(2), 416.927(d)(2).

9       A treating physician's opinion will not be given controlling

10 weight, however, when it is not well-supported by clinical or objective

11 findings, or when it is inconsistent with other substantial evidence in

12 the record.  <u>E.g.</u>, <u>Orn v. Astrue</u>, 495 F.3d 625, 631 (9th Cir. 2007).

13         Additional factors that impact the weight the ALJ will give a

14 treating physician's opinion include:

15 •    the "[l]ength of the treatment relationship and the frequency of

16      examination" by the treating physician;

17 •    the "nature and extent of the treatment relationship" between the

18      patient and the treating physician;

19 •    the amount of relevant evidence that supports the opinion and the

20      quality of the explanation provided;

21 •    the consistency of the medical opinion with the record as a whole;

22 •    the specialty of the physician providing the opinion;

23 •    the degree of understanding a physician has of the Administration's

24      "disability programs and their evidentiary requirements";

25 •    the degree of the physician's familiarity with other information in

26      the case record.

27 <u>See</u> 20 C.F.R. § 404.1527(d).

28                                    6

1    The ALJ is not required to give any weight to the opinion of a

2 physician that is not based on medical evidence.  See Batson v. Comm'r

3 of Soc. Sec. Admin., 359 F.3d at 1195. Furthermore, the ALJ is not

4 required to give weight to the opinions of a physician that are based on

5 plaintiff's self-reporting when the ALJ has found plaintiff not to be

6 credible.  See Tonapetyan v. Halter, 242 F.3d at 1149.

7    To reject the contradicted opinion of plaintiff's physician, the

8 ALJ must provide "specific and legitimate reasons" for doing so which

9 are supported by substantial record evidence.  Rollins v. Massanari,261

10 F.3d 853, 856 (9th Cir. 2001) (citation omitted).  "'The ALJ can meet

11 this burden by setting out a detailed and thorough summary of the facts

12 and conflicting clinical evidence, stating [her] interpretation thereof,

13 and making findings.'"  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th

14 Cir. 2008)(citation omitted).

15    The ALJ satisfied these standards here.

16    Plaintiff complains that the ALJ did not give controlling weight to

17 alleged findings by Dr. McDonnell with regard to plaintiff's pulmonary,

18 low back, and knee dysfunction.[4]  In fact, however, as the ALJ indicated,

19 the RFC for significantly curtailed "light" work is largely consistent

20 with Dr. McDonnell's assessment of plaintiff's functioning. (See TR 12-

21 14, 380-82.) To the extent Dr. McDonnell opined greater limitations than

22 were encompassed in the RFC, the ALJ concluded that Dr. McDonnell's

23

24 _____

25    [4]  Dr. McDonnell did not treat plaintiff for multiple
     sclerosis.  In fact, as the ALJ noted, the physician who
     diagnosed plaintiff with multiple sclerosis indicated that there
26   were not significant findings in that regard.  (TR 12, 263-64.)
     Indeed, the court observes that plaintiff herself indicated she
27   did not need treatment for multiple sclerosis.  (See TR 263-64.)

28                                    7

findings were entitled to "little weight" because Dr. McDonnell:

- did not appear to consider and, in fact, opined in conflict with an orthopedic surgeon, who was also an Agreed Medical Examiner for plaintiff's worker's compensation claim,[5] who concluded that plaintiff's low back problems precluded her only from performing heavy work, but did not bar her from working altogether (see TR 233-34);

- founded his conclusion that plaintiff cannot work in part upon purported pulmonary test findings that were not provided to the ALJ;

- is a primary care physician, whose conclusions regarding her back, knee, and pulmonary dysfunction are not corroborated by reports of physicians those sub-specialties;

- refused to fill out a state agency assessment form on plaintiff's behalf in 2004 (see TR 78);

- has not treated plaintiff to a degree that comports with the extensive level of limitation he opined in 2006;

- did not opine any particular limitations in 2007, and merely set out the subjective complaints made by plaintiff, whom the ALJ found not to be entirely credible in this regard (see TR 380-82).

(TR 14.)

   To the extent Dr. McDonnell's reports are susceptible of more than one rational interpretation, because the ALJ made full and detailed

---

   [5] "Agreed medical examiner" is a worker's compensation term of art that refers to a physician who is selected by the parties together when an injured worker is represented by an attorney and who is to assess disputed medical issues. Cal. Code. Regs., tit. 8, § 1 (f).

findings in evaluating the medical record, the Commissioner's conclusion must be upheld. See Key v. Keckler, 754 F.2d 1545, 1549 (9th Cir. 1985). The ALJ's findings here are supported by substantial evidence and provide a legally sufficient basis for the ALJ to decline to give any significant weight to Dr. McDonnell's findings of limitation beyond those reflected in the RFC finding. See 20 C.F.R. § 404.1527(d). Accordingly, there is no material legal error here.

**B.   Credibility (Issue # 2)**

Plaintiff next contends that the ALJ failed to properly evaluate her credibility and, more specifically, her subjective pain and symptom testimony.

In conducting an evaluation of plaintiff's credibility, the ALJ must make findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [plaintiff's] testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).   Absent affirmative evidence of malingering, an adverse credibility finding must be based on "clear and convincing reasons." Carmickle v. Comm'r of Social Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008).   Although the ALJ's interpretation of plaintiff's testimony may not be the only reasonable one, if it is supported by substantial evidence "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citation omitted).

In assessing a plaintiff's credibility, the ALJ may use "ordinary techniques" of credibility evaluation. Tonapetyan v. Halter, 242 F.3d 11244, 1147-48 (9th Cir. 2001).   Accordingly, inconsistencies in a plaintiff's testimony or on other relevant character evidence may weigh

1  into the evaluation. <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346 (9th Cir.

2  1991). Evidence of conservative medical treatment is also a

3  legally sufficient reason to discount a plaintiff's testimony regarding

4  the severity of an impairment.  <u>Parra v. Astrue</u>, 481 F.3d 742, 750-51

5  (9th Cir. 2007) (citation omitted.  <u>See also</u> <u>Tommasetti v. Astrue</u>, 533

6  F.3d 1035, 1040 (9th Cir. 2008) (ALJ made permissible inference that

7  plaintiff's pain was not all-disabling given that plaintiff did not seek

8  aggressive treatment program and responded favorably to conservative

9  treatment).  Additionally, a conflict with the medical evidence is "a

10 relevant factor." <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir.

11 2001) (citing 20 C.F.R. § 404.1529(c)(2)).   Once plaintiff produces

12 objective medical evidence of an underlying impairment, however, the

13 Commissioner may not reject plaintiff's subjective complaints based

14 *solely* on lack of objective medical evidence to fully corroborate the

15 alleged severity of her complaints. <u>Bunnell v. Sullivan</u>, 947 F.2d at

16 345.

17     Here, the ALJ agreed that plaintiff's impairments would produce

18 some level of the symptoms of which she complained and, consequently,

19 the RFC precludes plaintiff from excessive walking or other movement,

20 limits her to jobs that afford regular breaks and give her the

21 opportunity to stand and move on occasion, and limits her to working

22 only in an air-conditioned and low-pollutant environments.   (TR 13.)

23 The ALJ declined to credit plaintiff's subjective statements beyond what

24 is accounted for in the RFC because she:

25 •   made inconsistent statements regarding her daily activities and

26     need to rest (<u>see</u> TR 391-93, 400-05);

27 •   sought benefits for arthritis, low back pain, and multiple

28                                    10

1    sclerosis, and yet at the hearing emphasized her allegedly
2    disabling knee pain (see TR 61, 84, 93, 391-93);
3  •  continues to smoke despite her history of asthma and pulmonary
4    disease;
5  •  conceded that medication relieved her pain (TR 402);
6  •  made contradictory statements regarding her back pain, in stating
7    that it improved with chiropractic treatment, and yet also stating
8    that she still had two or three episodes of acute pain and spasm
9    each week (e.g., TR 404-05);
10 •  made multiple statements that are not reflected in treating source
11   records, such as that she suffers from debilitating muscle spasms
12   every two to three days and, alternately, that her back spasms have
13   improved with chiropractic treatment (see TR 242, 380-83, 404-05);
14 •  testified to disabling knee pain, while the record suggests she had
15   only mild knee impairments and was recommended surgery on a
16   prophylactic basis only (see TR 261, 272, 400);
17 •  stated that she had has to use a walker since 2002, whereas her
18   medical records do not indicate that she was recommended or
19   prescribed an assistive device (see TR 228, 242, 261, 380-83, 400);
20 •  has not undergone the serious level of ongoing medical treatment
21   that would be expected given her level of complaints, apart from
22   her worker's compensation claim.
23 (TR 13-14.)
24    These findings are supported by substantial evidence in the record
25 and provide a legally sufficient basis for the ALJ to decline to credit
26 plaintiff's subjective complaints in their entirety. See, e.g.,
27 Carmickle v. Comm'r of Social Sec. Admin., 533 F.3d at 1162.
28
                                      11

1    There is no material legal error here.

2    C.   **Chiropractor's Opinion** (Issue # 3)

3    Last, plaintiff claims the ALJ erred by not considering the opinion

4    of her chiropractor, Billy R. Lyon, D.C. (See TR 180.)

5    As the ALJ noted, however, (TR 14), a chiropractor is not

6    considered an acceptable medical source, see 20 C.F.R. § 404.1513, and

7    while plaintiff was free to offer chiropractic evidence to help the

8    Commissioner, there is no requirement that the Commissioner accept or

9    specifically refute such evidence. See Bunnell v. Sullivan, 912 F.2d

10   1149, 1152 (9th Cir. 1990), modified on other grounds, 947 F.2d 341 (9th

11   Cir. 1991).

12   Moreover, the ALJ provided specific and legitimate reasons for

13   declining to credit plaintiff's chiropractor to any greater extent than

14   is accounted for by the RFC assessment.  He found, specifically, that

15   Dr. Lyon's characterization of plaintiff's symptoms is not supported by

16   either her treating physician's records and opinions, (see, e.g., TR

17   180, 228, 242, 261, 380-83), or by plaintiff's own statements indicating

18   she was able to stand and walk occasionally without any assistive device

19   and perform at least light housework independently (see TR 180, 402-03).

20   (TR 14.)

21   These findings are supported by substantial evidence of record and

22   provide a legally sufficient basis for the ALJ to decline to give weight

23   to Dr. Lyons's opinions.

24   Accordingly, there is no material legal error here.

25                                **CONCLUSION**

26   Plaintiff clearly has severe impairments.  A plaintiff who can

27   still perform work in the national economy, even with a severe

28                                   12

1  impairment, is not disabled as that term is defined by the Act.  <u>See</u>

2  <u>generally</u> <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1395 (9th Cir. 1991).

3  Furthermore, if the evidence can reasonably support either affirming or

4  reversing the Commissioner's conclusion, the court may not substitute

5  its judgment for that of the Commissioner.  <u>Flaten v. Secretary of</u>

6  <u>Health and Human Services</u>, 44 F.3d at 1457.

7       After careful consideration of the record as a whole, the

8  magistrate judge concludes that the Commissioner's decision is supported

9  by substantial evidence and is free from material legal error.

10 Accordingly, it is ordered that judgment be entered in favor of the

11 Commissioner.

12 DATED: 11/4/09

13                         _____

14                         CAROLYN TURCHIN
                           UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                 13

**SOCIAL SECURITY ADMINISTRATION**
**Office of Disability Adjudication and Review**

### DECISION

<u>**IN THE CASE OF**</u>                          <u>**CLAIM FOR**</u>

                                                Period of Disability and
Vergie M Chandler                               Disability Insurance Benefits
(Claimant)

(Wage Earner)                                   (Social Security Number)

### <u>JURISDICTION AND PROCEDURAL HISTORY</u>

This case is before me on remand from the Appeals Council pursuant to a remand from the
United States District Court for the Eastern Division of the Central District of California because
the . The claimant appeared and testified at a hearing held on May 14, 2008, in San Bernardino,
California. Also appearing and testifying were Samuel Landau, M.D., an impartial medical
expert and Sandra M. Fioretti, an impartial vocational expert. The claimant is represented by
Attorney Bill LaTour.

Pursuant to the District Court remand order, the Appeals Council has directed the undersigned to
conduct a *de novo* hearing, take any further action needed to complete the record, and issue a
new decision. Ex. 5A

The claimant is alleging disability since May 15, 2002.

### <u>ISSUES</u>

The issue is whether the claimant is disabled under §§ 216(i) and 223(d) of the Social Security
Act. Disability is defined in the Act as the inability to engage in any substantial gainful activity
by reason of any medically determinable physical or mental impairment or combination of
impairments that can be expected to result in death or that has lasted or can be expected to last
for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of §§ 216(i) and 223 of the
Act are met. The claimant's earnings record shows that the claimant has acquired sufficient
quarters of coverage to remain insured through June 30, 2007 (hereinafter "the date last
insured"). Thus, the claimant must establish disability on or before that date in order to be
entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, I conclude the claimant was not under a disability
within the meaning of the Act from February 15, 2002 through the date last insured.

### <u>APPLICABLE LAW</u>

Under the authority of the Act, the Social Security Administration has established a five-step
sequential evaluation process for determining whether an individual is disabled (20 CFR



See Next Page

404.1520(a)).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine if the claimant was engaging in substantial gainful activity (20 CFR 404.1520(b)).  Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a)).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b)).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574 and 404.1575).  If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience.  If she is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p).  If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled.  If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).  If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled.  If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)).  An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  In making this finding, I must consider all of the impairments, including those that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 404.1520(f)).  The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and 404.1565).  If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), I must determine if the claimant is able to do any other work considering her residual functional capacity, age, edu-

EXHIBIT

cation, and work experience. If the claimant is able to do other work, she is not disabled. If she is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, I make the following findings:

**1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2007.**

**2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 15, 2002 through her date last insured of June 30, 2007 (20 CFR 404.1520(b) and 404.1571 *et seq.*).**

**3. Through the date last insured, the claimant had the following severe combination of impairments: degenerative arthritis and internal derangement of the knees, status post operative, degenerative disc and joint disease of the lumbosacral spine, degenerative arthritis of the shoulders, chronic sprain-strain of the cervical spine, multiple sclerosis, single episode, with residual minimal lower extremity weakness, asthmatic bronchitis, and chronic obstructive pulmonary disease (20 CFR 404.1520(c)).**

There has been no dispute among treating, examining, and reviewing physicians regarding the fact that the claimant's combination of impairment has resulted in more than slight limitation of the claimant ability to perform basic work-related activities.

**4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

The medical evidence of record documents a history of an industrial injury to the low back and right knee, which was found to be permanent and stationary in 1992 with a restriction to "light work" as well as a history of a later industrial injury involving the low back, which was found to be permanent and stationary in October 2001 with restrictions involving a preclusion of "heavy work" primarily on the basis of magnetic resonance imaging (MRI) studies revealing severe left foraminal stenosis at L5-S!, mild spinal stenosis at L4-5 , and moderate let foraminal stenosis at L3-4 since physical examination findings were unremarkable. Ex. 1F at 47ff; ex. 17F; ex. 5F. She has also had a history of bilateral shoulder pain starting in 2001 with mild degenerative changes on radiographic study of the left shoulder in May 2003, but there was no report of any shoulder problems in relation to her workers' compensation in 2001. Ex. 1F at 37. There are no reports of range of shoulder motion restriction from May 20002 through September 2003 when she was evaluated for left shoulder pain since February 2003 and found to have relative restriction of motion without any significant signs of arthritis on a radiographic study and then there was no further evaluation until December 2004 when the consultative internal medicine evalu-



See Next Page

12

ation was performed and function was normal on the left and mildly limited on the right. Ex. 1F at 8, 4, and 37; ex. 10 E at 4.

There is also a history of industrial injuries to both knees prior to the industrial injury to the low back, but there was no indication of in the treating source records of any treatment of the knees in relation to the amended onset date until shortly before she suffered a minor right knee injury on or about February 26, 2005 and the consultative medical evaluation in December 2004 found full range of motion n the knees with mild crepitus and only a slight limp favoring the right leg. Ex. 1F at 47 ff; ex. 3F at 8; ex. 20F at 55 and 68; ex. 10F. While Dr. Landau initially interpreted the reports in Exhibit 20F in 2006 as reflecting a listing level knee impairment this was base on a hasty last minute review at the time of the hearing in 2006, that evidence in fact has shows that a treating source orthopedic evaluation conducted on May 11. 2006 found only mild osteoarthritis and that a total knee arthroplasty was not recommended as Dr. Landau had thought in 2006 although a repeat arthroscopic surgery was not ruled out. Ex. 20F at 7. She apparently underwent right knee arthroscopic surgery in September 2006, and the treating surgeon reportedly recommended total right knee arthroplasty in October 2006 although there was only mild swelling and mild limitation of motion postoperatively. Ex. 21F at 3; ex. 22F at 3. Surgery however was put on hold in February 2007 because of an acute exacerbation of the claimant's asthma associated with a fifty percent reduction of lung function and a need for oxygen fourteen hours per day through May 2007. There was no indication of any deterioration of knee function following the surgery in October 2006 only a failure to obtain relief, and a physical medicine evaluation of the claimant's low back pain in November 2006, following the post operative right knee evaluation in October 2006 included no mention of any problems with gait or station which means there is no reasonable basis for discounting Dr. Landau's findings relative to the claimant musculoskeletal impairments.. Ex. 22F at 3.

As noted in the prior decision, the claimant has a long history of asthma and chronic obstructive pulmonary disease, secondary to cigarette smoking, with an inpatient hospitalization for any acute asthma attack in February 2001, no change from that point through 2002, emergency room treatment with breathing treatments in November 2003 and June 2004, and an undocumented hospitalization in December 2004. Ex. 1F at 4, 7, and 20-22; ex. 19F at 2. As noted above, the claimant was hospitalized in February 2007 for treatment of acute asthma attack, she reportedly admitted to smoking at least a few cigarettes per day at that time, and testing has reportedly found lung function to be reduced fifty percent, but no specific test findings were reported, no treating pulmonologist reports or records have been submitted, and a consultative medical evaluation at this point would not be helpful given the amount of time that has elapsed since the date last insured. Indeed, the submitted records do not reflect a marked or extreme degree of pulmonary dysfunction, and there is no indication that the claimant's pulmonary function was not expected to improve within twelve months of the point at which it deteriorated.

I have again noted the 2006 neurological evaluation at Exhibit 20F leading to a diagnosis of multiple sclerosis as well as the lack of significant findings at the time of the consultative medical evaluation in 2004. There is no indication of any change in the claimant's neurological status.

As also noted in the prior decision, the claimant's height and weight as of December 2004 would warrant a finding of moderate, Level II obesity except the claimant has never been described as obese by any treating source despite her history of asthma and knee problems.

**5.   After careful consideration of the entire record, I find that, through the date last insured, the claimant had, and never lost for any significant period of time, the residual func...**

See Next Page

**EXHIBIT**

tional capacity to perform light work as defined in 20 CFR 404.1567(b) except stand or walk two hours per eight-hour workday, sit six hours per eight-hour workday with breaks every two hours and interruptions of up to five minutes a day at unpredicted times, climb stairs occasionally, no significant climbing of ladders or working at heights, no significant squatting, crawling, need to work in an air-conditioned work environment free of excessive levels of inhaled pollutants kneeling, running, or jumping, and only occasional balancing and operation of foot pedals.

In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, I must follow a two-step process in which I must first determine if there are underlying medically determinable physical or mental impairments--i.e., impairments that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.

I have again noted the claimant's prehearing statements in which she emphasized how she was unable to work because of her asthma, low back pain, and multiple sclerosis. Ex. 1E at 1; ex. 9E at 1; ex. 11E at 1. At the hearing on remand, she emphasized that she had had back and right knee pain for many years and hip pain since 2002 that she had to use a walker, had fallen because of her pain since her surgery in September 2007 and was unable to have knee replacement surgery because her pulmonologist would not release her for surgery. She also stressed how she was always short of breath and needed to lay down and rest twice a day although she admitted she spent her typical day using a computer, walking around her home with a walker, and doing light housework and indicated only that she had to lay down when she was sitting and concentrating on paying bills because of back pain. She admitted that medication helped relieve her pain with no indication of any side-effects. She averred that even though her back pain and muscle spasm had improved with chiropractic treatment since the prior hearing she still had two to three episodes of acute back pain with muscle spasm every week.

After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

In terms of the claimant's alleged musculoskeletal pain, I note that the objective findings have been generally mild and otherwise negative and that the recommended knee surgeries have been offered on a prophylactic basis. The reports of the treating orthopedic surgeon even as summa-

See Next Page

EXHIBIT

rized by the primary care physician, Dr. McDonald, in December 2007 are not inconsistent with the residual functional capacity found herein above and indicated that the claimant was able to stand and walk occasionally with no indication of any need for an assistive device. As noted in my prior decision, the evidence of record as a whole has repeatedly indicated that the claimant's other musculoskeletal complaints have not been the focus of any serious ongoing medical treatment apart from her workers' compensation claim which left with a restriction only precluding heavy work. Indeed, her own testimony indicted her back problem had improved with chiropractic treatment even though that was not reflected in the treating source records any more than her complaints of extreme debilitating muscle spasms every two to three days now and even more in the past are not reflected in the treating source records.

As for her complaints involving shortness of breath, I note that her own testimony indicated that her condition deteriorated in February 2007. She has not submitted medical evidence showing her condition did not improve by February 2008 although there was no indication at the time of the hearing that she was still using an oxygen supplement.

In the course of her workers' compensation claim, after asserting she had become unable to work in August 2000, Dr. Hader, an orthopedic surgeon and Agreed Medical Examiner, concluded in 2001she was only unable to perform heavy work because of her low back problem. Ex. 17F at 11-12. This is consistent with the consultative internal medicine evaluation in December 2004 wherein the claimant was essentially found capable of medium work. Ex. 10F. At the hearing on remand, Dr. Landau affirmed his prior testimony regarding the clamant being able to perform at least a narrow range of light work as found herein above after explaining how he had misinterpreted Exhibit 20F in relation to the severity of the claimant's right knee impairment.

I note that the claimant's primary care physician, Stephen C. McDonald, M.D., endorsed the claimant's symptoms on March 17, 2006, emphasizing how sitting was limited to twenty minutes and standing five minutes because of low back muscle spasms. Ex. 19F at 2. He also found her unable to perform any work because of chronic obstructive pulmonary disease (COPD) citing pulmonary function test findings which are not of record. Indeed, Dr. McDonald appears to be unaware that the Agreed Medical Examiner in the claimant's workers' compensation case had discounted the claimant's complaints and found her only unable to perform heavy work or that the claimant had continued to work into 2002. This same doctor however had refused to fill out a State agency assessment form in 2004, and the level of symptomology reported in 2006 was not reflected in the treating source records or the level of treatment being provided. Ex. 6E. The more recent statement of Dr. McDonald, dated December 12, 2007, was submitted five months later and almost a month after the hearing on remand, and is little more than a summary of medical reports with key details left out as noted above regarding orthopedic examination and pulmonary test function findings. Indeed, the more recent statement does not appear to endorse the claimant's symptoms, rather it merely notes them. Given the inconsistency of the reported symptoms with the other evidence of record, I can give Dr. McDonald's findings little weight, not least because there has been no corroborating statement from the treating orthopedic surgeon or the treating pulmonologist.

I have noted the statement of the claimant's treating chiropractor, Billy R. Lyon, D.C., at Exhibit 8F, indicating the claimant was unable to perform any work on a sustained full time basis since august 2000. Aside from the fact that a chiropractor is not an acceptable medical authority under the Regulations, Dr. Lyon's characterization of the claimant's symptoms is not reflected elsewhere in the treating source records and her own statements indicating she was able to stand

See Next Page



and walk occasionally without any assistive device and perform at least light housework independently. I can give this assessment no significant weight.

**6.  Through the date last insured, the claimant's past relevant work as an office assistant did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).**

The claimant performed such work from 1991 to 2002 on a sustained full time basis. It was substantial gainful activity and thus past relevant work as defined in the Regulations.

In comparing the residual functional capacity the claimant had as of the date last insured with the physical and mental demands of this work, I find that the claimant was able to perform it as it was actually and generally performed. While she has elsewhere described such work elsewhere as involving significant lifting and carrying of heavy, cumbersome files up and down stairs, she initially reported in this case that it was sedentary data entry work which the vocational expert testified was consistent with the description of such work in the United States Department of Labor's *Dictionary of Occupational Titles* at 214.382-014. Ex. 6E. I find the claimant's past relevant work was semi-skilled sedentary work performable within the range of the residual functional capacity found herein above as she performed it and as it is generally performed.

**7.  The claimant was not under a disability as defined in the Social Security Act, at any time from February 15, 2002, the alleged onset date, through June 30, 2007, the date last insured (20 CFR 404.1520(f)).**

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on August 16, 2004, the claimant was not disabled under §§ 216(i) and 223(d) of the Social Security Act through June 30, 2007, the date last insured.

Mason D. Harrell, Jr.
Administrative Law Judge

Date:    [JUN 2 5 2008

JJM



SOCIAL SECURITY ADMINISTRATION

## DISABILITY DETERMINATION AND TRANSMITTAL

**16**

| 1. DESTINATION | | | | | 2. DDS CODE | 3. FILING DATE | 4. SSN | BIC (if CDB or DWB CLAIM) |
|---|---|---|---|---|---|---|---|---|
| DDS [X] | ODO [ ] | DRS [ ] | DQB [ ] | INTPSC [ ] | S59 | 8/16/04 | ▇▇▇▇▇ | |

**5. NAME AND ADDRESS OF CLAIMANT (include ZIP Code)**

VERGIE M CHANDLER
▇▇▇▇▇▇▇▇▇▇▇▇▇

**6. WE'S NAME (if CDB or DWB CLAIM)**

**7. TYPE CLAIM (Title II)**

| DIB | FZ | DWB | CDB-R | CDB-D | RD-R | RD-D | RD | P-R | P-D | MQFE |
|---|---|---|---|---|---|---|---|---|---|---|
| [X] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |

**8. TYPE CLAIM (Title XVI)**

| DI | DS | | DC | BI | BS | BC | AI | AS |
|---|---|---|---|---|---|---|---|---|
| [ ] | [ ] | | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |

| 9. DATE OF BIRTH | 10. PRIOR ACTION | 11. REMARKS |
|---|---|---|
| 11/13/1941 | PD [ ]  PT [ ] | 909-864-1469 |

| 12. DISTRICT-BRANCH OFFICE ADDRESS (include Zip Code) | DO-BO CODE | |
|---|---|---|
| STE 101<br>605 N ARROWHEAD AVENUE<br>SAN BERNARDINO, CA  92401 | 959 | 10/05/04<br>Ref Agy |

| 13. DO-BO REPRESENTATIVE | 14. DATE | 11A. Presumptive Disability [ ] | 11B. Impairment |
|---|---|---|---|
| D Kerns 909-383-5792 | | | |

### DETERMINATION PURSUANT TO THE SOCIAL SECURITY ACT, AS AMENDED

| 15. CLAIMANT DISABLED | 16A. PRIMARY DIAGNOSIS | BODY SYS. | CODE NO. | 16B. SECONDARY DIAGNOSIS | CODE NO. |
|---|---|---|---|---|---|
| A. [ ] Disability Began<br>B. [ ] Disability Ceased | Disorders of Back (Discog enic & Degenerative) | 01 | 7240 | Asthma | 4930 |

| 17. DIARY TYPE | MO./YR. | REASON |
|---|---|---|
| | | |

| 18. CASE OF BLINDNESS AS DEFINED IN SEC. 1614(a)(2)/(216)(i) | | 19. CLAIMANT NOT DISABLED | | |
|---|---|---|---|---|
| A. [ ] Not Disab. for Cash Bene. Purp. | B. [ ] Disab. for Cash Benefit Purp. Beg. | A. [X] Through Date of Current Determination | B. [ ] Through | C. [ ] Before Age 22 (CDB Only) |

| 20. VOCATIONAL BACKGROUND | OCC YRS. | ED YRS. | 21. VR ACTION | SC IN | SC OUT | Prev Ref |
|---|---|---|---|---|---|---|
| | 0 | 16 | | | [X] | |

| 22. REG-BASIS CODE | 23. MED LIST NO. | 24. MOB CODE | 25. REVISED DET | 25A. Initial | Recon | Recon DHU | ALJ Hearing | Appeals Council | U.S. District Court |
|---|---|---|---|---|---|---|---|---|---|
| H1-1520E | | | [ ] | A. [X] | B. [ ] | C. [ ] | D. [ ] | E. [ ] | F. [ ] |

| 26. LIST NO. | A. | B. | C. | D. | E. | F. |
|---|---|---|---|---|---|---|
| | | | | | | |

| 27. RATIONALE | See Attached [ ] SSA-4268-U4/C4 | Check If Vocational [ ] Rule Met. Cite Rule |
|---|---|---|

| 28. | A. [ ] Period of Disability | B. [ ] Disability Period | C. [ ] Estab Beg | AND D. [ ] Continues | E. [ ] Term |
|---|---|---|---|---|---|

| 29. LTR/PAR NO. | 30. DISABILITY EXAMINER-DDS | 31. DATE | 32. PHYSICIAN OR MEDICAL SPEC. SIGNATURE | 33. DATE |
|---|---|---|---|---|
| | S FRY/D20 | 1/13/05 | 4734  MC SIGNATURE ON FORM IN FILE DATED 12/21/04<br>R.Navlakh | |

| 32A. PHYSICIAN OR MEDICAL SPEC. NAME (Stamp, Print, or Type) | 32B. SPEC. CODE |
|---|---|
| | 34 |

**34. REMARKS**

CER:Y  EOR:Y
DLI 06/07  INCOME PRECLUDES SSI

RECEIVED
JAN 2 5 2005
BY ▇▇▇▇

**MULTIPLE IMPAIRMENTS CONSIDERED**

34A. COMBINED MULTIPLE NONSEVERE-SEVERE

34B. COMBINED MULTIPLE NONSEVERE-NONSEVERE

| 35. BASIS CODE | 36. REV. DET. CODES | 37. SSA REPRESENTATIVE | SSA CODE | 38. DATE |
|---|---|---|---|---|
| | | | | 1-20-05 |

Form SSA-831-C3 (5/89)
Previous editions may be used

EXHIBIT
Page ___ of ___

Case Number

EXHIBIT 1A

[ ] CASE CONTROL

SOCIAL SECURITY ADMINISTRATION

## DISABILITY DETERMINATION AND TRANSMITTAL

— 17

| 1. DESTINATION | | | | | 2. DDS CODE | 3. FILING DATE | 4. SSN | BIC (if CDB or DWB CLAIM) |
|---|---|---|---|---|---|---|---|---|
| DDS | ODO | DRS | DQB | INTPSC | S59 | 2/14/05 | | |
| ☒ | ☐ | ☐ | ☐ | ☐ | | | | |

**5. NAME AND ADDRESS OF CLAIMANT (include ZIP Code)**

VERGIE M CHANDLER

**6. WE'S NAME (if CDB or DWB CLAIM)**

**7. TYPE CLAIM (Title II)**

| DIB | FZ | DWB | CDB-R | CDB-D | RD-R | RD-D | RD | P-R | P-D | MQFE |
|---|---|---|---|---|---|---|---|---|---|---|
| ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**8. TYPE CLAIM (Title XVI)**

| DI | DS | DC | BI | BS | BC | AI | AS |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

| 9. DATE OF BIRTH | 10. PRIOR ACTION | | | 11. REMARKS |
|---|---|---|---|---|
| 11/13/1941 | PD ☐ | PT ☐ | | RECON FILED   2/14/05 |

909-864-1469

| 12. DISTRICT-BRANCH OFFICE ADDRESS (include Zip Code) | DO-BO CODE |
|---|---|
| STE 101 | 959 |
| 605 N ARROWHEAD AVENUE | |
| SAN BERNARDINO, CA  92401 | |

2/22/05

Ref Agy

| 13. DO-BO REPRESENTATIVE | 14. DATE | 11A. Presumptive Disability ☐ | 11B. Impairment ☐ |
|---|---|---|---|
| D Martel 909-383-5778 | | | |

## DETERMINATION PURSUANT TO THE SOCIAL SECURITY ACT, AS AMENDED

| 15. CLAIMANT DISABLED | 16A. PRIMARY DIAGNOSIS | BODY SYS. 01 | CODE NO. 7240 | 16B. SECONDARY DIAGNOSIS | CODE NO. 4930 |
|---|---|---|---|---|---|
| A. ☐ Disability Began | Disorders of Back (Discogenic & Degenerative) | | | Asthma | |
| B. ☐ Disability Ceased | | | | | |

| 17. DIARY TYPE | MO./YR. | REASON |
|---|---|---|
| | | |

**18. CASE OF BLINDNESS AS DEFINED IN SEC. 1614(a)(2)(216)(i)**

**19. CLAIMANT NOT DISABLED**

| A. ☐ Not Disab. for Cash Bene. Purp. | B. ☐ Disab. for Cash Benefit Purp. Beg. | A. ☒ Through Date of Current Determination | B. ☐ Through | C. ☐ Before Age 22 (CDB Only) |
|---|---|---|---|---|

| 20. VOCATIONAL BACKGROUND | OCC YRS. 0 | ED YRS. 16 | 21. VR ACTION | SC IN | SC OUT ☒ | Prev Ref |
|---|---|---|---|---|---|---|

| 22. REG-BASIS CODE | 23. MED LIST NO. | 24. MOB CODE | 25. REVISED DET | 25A. Initial A. ☐ | Recon B. ☒ | Recon DHU C. ☐ | ALJ Hearing D. ☐ | Appeals Council E. ☐ | U.S. District Court F. ☐ |
|---|---|---|---|---|---|---|---|---|---|
| H1-1520E | | | | | | | | | |

| 26. LIST NO. | A. | B. | C. | D. | E. | F. |
|---|---|---|---|---|---|---|

| 27. RATIONALE | See Attached SSA-4268-U4/C4 ☐ | Check If Vocational Rule Met. Cite Rule ☐ |
|---|---|---|

| 28. | A. ☐ Period of Disability | B. ☐ Disability Period | C. ☐ Estab Beg | AND. ☐ Continues | E. ☐ Term |
|---|---|---|---|---|---|

| 29. LTR/PAR NO. | 30. DISABILITY EXAMINER-DDS | 31. DATE | 32. PHYSICIAN OR MEDICAL SPEC. SIGNATURE | 33. DATE |
|---|---|---|---|---|
| | J MALONE/D60 | 3/18/5 | | |

| 32A. PHYSICIAN OR MEDICAL SPEC. NAME (Stamp, Print, or Type) | 32B. SPEC. CODE |
|---|---|
| F. Kalmar, MD | 34 |

**34. REMARKS**

CER:N  EOR:Y      Recon Affirmation

BILL  LATOUR
PO BOX 1669
LOMA LINDA, CA  92354
ATTORNEY: BILL LA TOUR 11332 MOUNTAIN VIEW STE C LOMA LINDA CA 909

MAR 23 2005

**MULTIPLE IMPAIRMENTS CONSIDERED**

**34A. COMBINED MULTIPLE NONSEVERE-SEVERE**

**34B. COMBINED MULTIPLE NONSEVERE-NONSEVERE**

| 35. BASIS CODE | 36. REV. DET. CODES | 37. SSA REPRESENTATIVE | SSA CODE | 38. DATE |
|---|---|---|---|---|
| | | | | MAR 18 2005 |

EXHIBIT 2A
Page ___ of ___

Form SSA-831-C3 (5/89)
Previous editions may be used

Electronic Input:   DECISION   CASE CONTROL

Case Number

EXHIBIT